**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

**JAMES P. SEIM, Dr., D.C.,**

Plaintiff,

v.

**NATIONAL LIFE OF VERMONT, NATIONAL LIFE INSURANCE COMPANY, a Vermont Corporation, and UNUMPROVIDENT CORP., a Maine Corporation,**

Defendants.

---

Civil No. 01-2434 (PAM/JGL)

**O R D E R**

APPEARANCES

Jeffery M. Thompson, Esq. for Plaintiff.

Terence J. Wagener, Esq. for Defendants.

---

JONATHAN LEBEDOFF, Chief United States Magistrate Judge

The above-entitled matter came on for hearing before the undersigned Chief Magistrate Judge of District Court on May 21, 2002, on Plaintiffs' Motion to Compel Defendants to Produce Documents and Further Responses to Interrogatories (Doc. No. 27), and Plaintiff's Motion to Amend the Complaint (Doc. No. 30). The case has been referred to the undersigned for resolution of pretrial matters pursuant to 28 U.S.C. § 636 and D. Minn. LR 72.1.

FILED MAY 2 9 2002
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

## I. INTRODUCTION

This case arises out of an insurance coverage dispute. Plaintiff is a chiropractor. In 1989, Plaintiff bought "own occupation" disability insurance from Defendant National Life of Vermont. Sometime after Plaintiff bought his policies, Defendant National Life of Vermont was purchased by Defendant UnumProvident and/or Defendant Provident. Plaintiff timely paid his premiums, and the policies were in effect during all times relevant to the instant litigation. In April 2000, Plaintiff was in an automobile accident in which he injured his neck, spine, and upper extremities. Plaintiff contends that as a result of his injuries he is permanently disabled within the meaning of his insurance policies. Specifically, Plaintiff avers that he is unable to perform chiropractic work without risking further injury and suffering pain.

In July 2000, Plaintiff began collecting disability benefits from Defendants. In June 2001, Plaintiff underwent an independent medical exam at Defendants' request. The independent medical examiner, Dr. Dowdle, concluded that Plaintiff was not disabled under the policies. Defendants then ceased paying Plaintiff's disability benefits. Defendants are currently paying Plaintiff's disability benefits under a preliminary injunction ordered by the Honorable Paul A. Magnuson. Plaintiff contends that Defendants breached his insurance contracts by refusing to pay disability benefits.

## II. DISCUSSION

In the instant motions, Plaintiff seeks permission to amend his complaint to add claims for invasion of privacy, bad faith, anticipatory breach of contract, and punitive damages. Plaintiff also seeks an order compelling discovery.

### A. Plaintiff's Motion to Amend His Complaint

The Federal Rules of Civil Procedure allow for liberal amendment of pleadings. See Dennis v. Dillard Dep't Stores, Inc., 207 F.3d 523, 525 (8th Cir. 2000). After a responsive pleading is served, a party may amend its complaint only by leave of the court, which "shall be freely given." See Fed. R. Civ. P. 15(a). The Supreme Court has construed Rule 15(a) in the following way:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason - such as undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc. - the leave sought should, as the rules require, be "freely given."

Forman v. Davis, 371 U.S. 178, 182 (1962).

The Eighth Circuit follows this liberal approach and reasons that a court should not deny a motion to amend unless the proffered claim is "clearly frivolous." Becker v. University of Nebraska, 191 F.3d 904, 908 (8th Cir. 1999) (citation omitted). Therefore, unless the claim is clearly frivolous, a court may not consider the likelihood of success on the merits when deciding whether to

allow an amendment. See Popp Telcom v. American Sharecom, Inc., 210 F.3d 928, 944 (8th Cir. 2000) (quoting Buder v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 644 F.2d 690, 695 (8th Cir. 1981)). However, the right to amend is not absolute and denial of leave to amend may be justified by "undue delay, bad faith on the part of the moving party, futility of the amendment or unfair prejudice to the opposing party." Sanders v. Clemco Indus., 823 F.2d 214, 216 (8th Cir. 1987) (citation omitted).

In the instant case, Plaintiff seeks to add four claims. The Court will address each claim separately.

**1. Invasion of Privacy**

Plaintiff argues that his privacy was invaded by Jon Kinard ("Kinard") who was hired by Defendants to conduct surveillance of Plaintiff. As a result of Kinard's actions, which are described below, Plaintiff claims he suffered emotional distress.

Defendants argue that Plaintiff should not be allowed to amend his complaint. Specifically, Defendants assert that Plaintiff has not demonstrated that Kinard's conduct was sufficiently offensive so as to constitute an invasion of privacy. Therefore, according to Defendants, Plaintiff's amendment would be futile.

When a party opposes a motion to amend on the basis of futility, the court must apply the same standard as it applies when faced with a motion

to dismiss. See Four D, Inc. v. Dutchland Plastics Corp., No. CIV. 01-2073, 2002 WL 570655, at *3 (D. Minn. April 15, 2002) (citation omitted). When considering a motion to dismiss, the court must take all the facts alleged in the complaint as true and must construe the allegations in the complaint, and the reasonable inferences arising therefrom, in favor of the pleader. See id. (citations omitted).

Under Minnesota law, the tort of intrusion upon seclusion, one form of invasion of privacy, has three elements: (1) an intrusion, (2) that is highly offensive, (3) into some matter in which a person has a legitimate expectation of privacy. See Swarthout v. Mutual Serv. Life Ins. Co., 632 N.W.2d 741, 744-45 (Minn. Ct. App. 2001).

Plaintiff's proposed amended complaint states that Kinard:

> conducted surveillance in a manner that invaded [Plaintiff's] privacy[;] . . . staked out [Plaintiff's] home and business; made at least one telephone call to [Plaintiff's] home, impersonating himself as someone looking for another fictitious individual; followed and stalked [Plaintiff]; when discovered, chased [Plaintiff] at speeds up to 80 miles an hour weaving through traffic, chasing him into parking lots and through residential streets, eventually forcing [Plaintiff] to stop in the middle of an intersection; tried to secure access to [Plaintiff's] private health club through false pretenses in order to view [Plaintiff] in the locker room and in a strengthening program; . . . and, notwithstanding having been discovered, paraded his pickup truck up and down [Plaintiff's] cul-de-sac one evening once every hour in order to peep into the windows . . . in hopes of seeing [Plaintiff]. He in fact was successful in spying on [Plaintiff] in his home through his windows and in his vehicle through its tinted, privacy windows. He engaged in this conduct without ever disclosing who he was or why he was stalking

> [Plaintiff]. His conduct was of a nature such as to create in the stalked person a reasonable fear and anxiety.

(Pl. First Amend. Complaint ¶ 40.) According to the amended complaint, Plaintiff had a reasonable expectation of privacy in his home, his vehicle, while running his errands, and while traveling on the roads; and that Kinard's behavior constituted and intrusion which was "highly offensive to the ordinary, reasonable person." (Id. ¶¶ 41, 43-44.) Plaintiff's amended complaint cites to the investigator's deposition and states that the investigator and Defendants conducted the above chasing and "spying" without any regard for Plaintiff's concerns. (Id. ¶ 45.)

Taking the facts in the proposed amended complaint as true, the Court finds that Plaintiff's claim is not clearly frivolous. See Becker, 191 F.3d at 908. Plaintiff has made a "colorable showing" sufficient to withstand the application of the "clearly frivolous" rule. Karl's Inc. v. Sunrise Computers, Inc., 901 F.2d 657, 660 (8th Cir. 1990). Defendants do not argue that they will be unduly prejudiced by this amendment or that Plaintiff's amendment is the product of bad faith. See Saunders, 823 F.2d at 216. Accordingly, this part of Plaintiff's motion is granted, and Plaintiff may amend his complaint to add a claim for invasion of privacy.

### 2. Bad Faith Breach of Contract Based on Exceptional Circumstances

Plaintiff argues that he is entitled to add a claim for bad faith because Defendants committed the tort of invasion of privacy while handling Plaintiff's insurance claim. Plaintiff seeks to add this claim so that he can pursue extra-contractual damages. According to Plaintiff, extra-contractual damages arc available when a breach of contract is accompanied by an independent tort.

Defendants argue that under Minnesota law, there is no clear standard by which an insured may assert a claim of bad faith against his insurer. Defendants also assert that Plaintiff's bad faith claim based on Kinard's conduct is not sufficiently separate from Plaintiff's breach of contract claim to support an independent claim.

Ordinarily, a plaintiff alleging breach of contract is limited to the damages flowing from the breach. See Wild v. Rarig 234 N.W.2d 775, 789 (Minn. 1975). Plaintiff "must show more than malicious failure to pay an insurance claim in order to recover extra-contractual damages." Pillsbury Co. v. National Union Fire Ins. Co., 425 N.W.2d 244, 249 (Minn. Ct. App. 1988) (citation omitted). This is true except in "exceptional cases" where a defendant's breach of contract is accompanied by an independent tort. See Wild, 234 N.W.2d at 789; Hanks v. Hubbard Broad., Inc., 493 N.W.2d 302, 307-08 (Minn. Ct. App. 1992).

The Wild court proffered the following example of exceptional circumstances: A railroad has a duty to carry passengers to their destinations. That is the basis of the contract. However, extra-contractual damages are available to a passenger who suffers "willful and unlawful injuries" while riding the train. Such a situation creates an independent tort for the injury because the duty "is an incident of the relationship rather than the contract, and the carrier would be liable if the passenger was carried free." Wild, 234 N.W.2d at 790.

In determining whether an independent tort exists such that extra-contractual damages are available, the Court must determine whether "a relationship [existed] which would give rise to [a] legal duty without enforcement of the contract promise itself." Hanks, 493 N.W.2d at 308.

The Court finds that the Parties' relationship gave rise to Defendants' legal duty to refrain from invading Plaintiff's privacy. Although Kinard's conduct occurred in the context of Plaintiff's insurance claim, Kindard's alleged invasion of Plaintiff's privacy is separate from the breach of contract. See id. (stating that a breach of contract does not give rise to a separate tort when "the breach of duty is indistinguishable from the breach of contract").

Defendants argue that they had no duty to protect Plaintiff's privacy. Defendants assert that since insurance forms request very personal

information and insureds are often required to submit to examinations and investigations by insurance companies, Defendants had no contractual duty to protect Plaintiff's privacy. The Court finds this argument misplaced. It is precisely because the contract did not specifically provide for privacy protection that Plaintiff should be allowed to state a claim for extra-contractual damages. Defendants' duty to refrain from invading Plaintiff's privacy was separate from Defendants' duties under the contract. The case at the bar is analogous to the Wild court's train passenger example. In that example, the contractual duty was to transport the passenger to his destination. However, the railroad also had a separate duty to protect the passenger from injury. Once a passenger was injured, he would be entitled to extra-contractual damages for the railroad's breach of its duty to keep him safe.

Defendants' duty to refrain from invading Plaintiff's privacy exists separately from Defendants' duty to pay benefits under the insurance contract. Taking the facts in the proposed amended complaint as true, Plaintiff has demonstrated that the requisite exceptional circumstances exist to allow Plaintiff to amend his claim to include a claim for bad faith breach of contract, including extra-contractual damages.[1] Therefore, Plaintiff's claim is not clearly

[1]The Court does not agree with Plaintiff that Defendants' contempt in failing to comply with a court-ordered injunction is an independent wrongful act which supports Plaintiff's claim for exta-contractual damages.

frivolous and this part of Plaintiff's motion is granted. Plaintiff may amend his complaint to add a claim for bad faith breach of contract.[2]

### 3. Anticipatory Breach of Contract

Plaintiff argues that he is entitled to amend his complaint to add a claim for anticipatory breach of contract. Specifically, Plaintiff asserts that Defendants' words and actions demonstrate that they "have no intention" of performing under the contracts, even if a jury finds they must. (Pl. Mem. Supp. Mot. Amend at 18.)

Defendants respond that it is inappropriate for Plaintiff to seek future benefits because under the terms of the policies, Plaintiff must provide on-going proof of a continued disability. Therefore, Defendants argue, this amendment would be futile. Defendants have not provided copies of the policies to support this contention.

Anticipatory breach exists when there is:

> a definite and unequivocal manifestation of intention on the part of the repudiator that he will not render the promised performance when the time fixed for it in the contract arrives.

Bell v. Olson, 424 N.W.2d 829, 832 (Minn. Ct. App. 1988) (citation omitted). Plaintiff's First Amended Complaint states that:

---

[2]Count VI of Plaintiff's First Amended Complaint is for "Tortious Breach of Contract." However, all motion papers and the oral argument referred to the proposed amendment as one for "bad faith." For consistency, the Court has used the term "bad faith" in its discussion.

> By way of their conduct and statements, defendants have clearly an unequivocally indicated that they have no intention of complying with the insurance contract or the essential duties thereof now or in the future, and that they will never comply with the insurance contract unless and to the extent that the court so orders. Defendants have clearly indicated an intent to force Dr. Seim to bring a new lawsuit and new motions for injunctive relief for each months [sic] benefits notwithstanding any decision that this court reaches. Defendants have anticipatorily breached the insurance contract.

(Pl. First Amend. Complaint ¶ 61.) Plaintiff's amended complaint also cites Defendants' refusal to comply with the court-ordered injunction, and the trial court's finding of contempt. (Id. ¶¶ 54, 57.) Defendants do not argue that this amendment would subject them to prejudice or that Plaintiff's amendment is futile. Rather, they proffer arguments based on the merits of the proposed claim. These are inappropriate arguments at this time. See Popp, 210 F.3d at 944. The Court does not find Plaintiff's claim clearly frivolous. Accordingly, this part of Plaintiff's motion is granted, and Plaintiff may amend his complaint to add a claim for anticipatory breach of contract.

### 4. Plaintiffs' Motion to Amend To Add a Claim for Punitive Damages Under State Law

#### a. Legal Standard

Plaintiffs move this Court for leave to amend their Complaint to add a claim for punitive damages based on Kindard's invasion of privacy.

Punitive damages are not intended to compensate a wronged plaintiff. See Ulrich v. City of Crosby, 848 F. Supp. 861, 867 (D. Minn.1994).

Rather, punitive damages are intended to "both punish and deter" the wrongdoer and others from "intentional wrongs and deliberate disregard of the safety or rights of others." Molenar v. United Cattle Co., 553 N.W.2d 424, 429 (Minn. Ct. App. 1996) (citing Rosenbloom v. Flygare, 501 N.W.2d 597, 601 (Minn. 1993)).

In the District of Minnesota, a party must follow the requirements of Minn. Stat. §§ 549.191 and 549.20 to plead punitive damages for claims brought pursuant to Minnesota state law. See Ulrich, 848 F. Supp. at 866 (citations omitted). A plaintiff seeking to assert a punitive damage claim may not include it in the initial complaint, but must move for leave to amend the complaint based on a prima facie showing of entitlement. See id. at 867; Minn. Stat. § 549.191. At this point in the litigation, "[t]he plaintiff is not required to demonstrate an entitlement to punitive damages per se, but only an entitlement to allege such damages." Ulrich, 848 F. Supp. at 867 (citation omitted).

Prima facie evidence is evidence which, if unrebutted, would sustain a judgment in the moving party's favor. See Swanlund v. Shimano Indus. Corp., 459 N.W.2d 151,154 (Minn. Ct. App. 1990) (citing Black's Law Dictionary 1071 (5th ed. 1979)). The term "prima facie" does not describe a quantum of evidence, but a standard for designating meritorious claims. See id. The quantum of evidence needed to plead punitive damages is prescribed

by Minn. Stat. § 549.20, subd. 1(a), which requires "clear and convincing evidence that the acts of the defendant show deliberate disregard for the rights or safety of others." To be clear and convincing, the proof must be more than a preponderance but less than beyond a reasonable doubt. See Weber v. Anderson, 269 N.W.2d 892, 895 (Minn. 1978). "Where the evidence is sufficient to permit the Jury to conclude that it is 'highly probable' that the defendant acted with deliberate disregard for the rights or safety of others, the 'clear and convincing' standard [is] satisfied." Olson v. Snap Prods., Inc., 29 F. Supp. 2d 1027, 1036 (D. Minn. 1998) (quoting Ulrich, 848 F. Supp. at 868) (internal citations omitted). Deliberate disregard is statutorily defined as follows:

> (b) A defendant has acted with deliberate disregard for the rights or safety of others if the defendant has knowledge of facts or intentionally disregarded facts that create a high probability of injury to the rights or safety of others and:
>
> (ii) deliberately proceeds to act in conscious or intentional disregard of the high degree of probability of injuries to the rights or safety of others; or
>
> (iii) deliberately proceeds to act with indifference to the high degree of probability of injuries to the rights or safety of others.

Minn. Stat. § 549.20, subd. 1(b). The Court must not make any credibility determinations or consider any challenge to Plaintiff's evidence. See

Swanlund, 459 N.W.2d at 154. Punitive damages may be awarded for the acts of an agent which were authorized the principal. See Minn. Stat. § 549.20, subd. 2.

**b. Whether Plaintiffs May Plead Punitive Damages Under the State Law Claims Asserted**

Plaintiff seeks to add claims for punitive damages based on invasion of privacy and bad faith breach of contract. Minnesota courts allow punitive damages in breach of contract cases in which the breach is accompanied by an underlying tort. See Pillsbury, 425 N.W.2d at 248. In the instant case, Plaintiff's underlying tort is invasion of privacy. Plaintiff's bad faith breach of contract action is inextricably tied to his invasion of privacy claim. In fact, Plaintiff's entire bad faith claim is based on Kinard's surveillance. Since the factual bases is the same for both claims, the Court will analyze Plaintiff's claims for punitive damages based on Kindard's conduct.

Plaintiff argues that Kinard acted with deliberate disregard for Plaintiff's rights when he "stalked" him. According to Plaintiff's memorandum, Kinard continued surveillance after Plaintiff suspected he was being followed and that Kindard "just didn't care how his conduct impacted [Plaintiff]." (Pl. Mem. Supp. Mot. Amend at 15.)

For support, Plaintiff submits excerpts from Kinard's deposition and Plaintiff's own affidavit. The Court finds that these submissions do not

provide clear and convincing evidence that Defendants acted with deliberate disregard for Plaintiff's rights.

Although Plaintiff does not cite any specific evidence to support his contention that Kinard did not care how his surveillance impacted Plaintiff, the Court assumes Plaintiff is referring to the following statement: "my job is to document their activities . . . . And I don't worry that somebody is going to see me or I am not going to worry that someone is going to get mad at me about something." (Pl. Ex. 5 at 83.) This statement does not demonstrate disregard for Plaintiff. This statement demonstrates Kindard's lack of concern over being caught. Nothing in this statement or any of Kindard's deposition testimony evidences Kindard's knowledge of Plaintiff's alleged concern or anguish over being followed.

While the deposition testimony indicates that Kinard felt Plaintiff eventually knew he was being followed, it does not state that Plaintiff indicated he wanted Kindard to stop or that Kindard pursued Plaintiff once spotted. In fact, Kinard just drove past Plaintiff after being spotted on a residential street. (Pl. Ex. 6 at 68.) While it is true that Kinard continued surveillance of Plaintiff's street and the exterior of Plaintiff's home the next evening, Kinard testified that Plaintiff was not aware of his presence. (Pl. Ex. 5 at 93-94.) In fact, all Kinard saw of Plaintiff through Plaintiff's living room window was the back of his head. (Pl. Ex. 5 at 94.)

Throughout Kindard's deposition testimony, he states that he followed Plaintiff in his car at distances of a couple hundred yards to half a mile. (Pl. Ex. 5 at 35, 38, 39, 60.) Even when Kindard saw into Plaintiff's picture window, it was with the naked eye from a moving car. (Pl. Ex. 5 at 89-90.)

Plaintiff also asserts that Kinard knew he was tortuously invading Plaintiff's right to privacy in his home and his health club. (Pl. Mem. Supp. Mot. Amend at 9.) For support, Plaintiff cites pages 117-18 of Kindard's deposition. (Id.) However, those pages do not support Plaintiff's contention. Rather, Kinard's testimony merely demonstrates that Kindard knew he could not film Plaintiff inside his home or inside his health club. (Pl. Ex. 5 at 117-18.) Plaintiff does not assert that he was filmed in these places, and Kindard's deposition simply does not provide clear and convincing evidence that Kindard acted with deliberate disregard for Plaintiff's rights. Kindard observed things from public places. Kindard testified that he thought he was unnoticed while driving on Plaintiff's cul-de-sac; that he only drove by Plaintiff's home once an hour from dusk until seven p.m. on one evening; and only once from seven p.m. until eleven p.m. on the same evening. (Pl. Ex. 5 at 90-93.) This type of activity does not demonstrate deliberate disregard.

Plaintiff also submits his own affidavit as evidence. Notably missing from the affidavit is any mention of Kindard or invasion of privacy.

Plaintiff's affidavit focuses on his injuries and their effects on his ability to work. (Pl. Ex. 2.)

Plaintiff has not demonstrated by clear and convincing evidence that Kindard, acting as Defendants' agent, acted in deliberate disregard for Plaintiff's rights such that a claim for punitive damages is appropriate. Therefore, this part of Plaintiff's motion is denied.

In conclusion, Plaintiff's motion to amend his pleadings is granted as to claims for invasion of privacy, bad faith breach of contract based on exceptional circumstances, and anticipatory breach of contract; and denied as to a claim for punitive damages.

**B. Plaintiffs' Motion to Compel Discovery**

Plaintiff has submitted a motion to compel discovery on fifteen disputed interrogatories and document requests. Plaintiff has grouped some of these requests into categories. For brevity, the Court will also address the requests categorically whenever possible, only referring to specific requests where necessary.

The Federal Rules of Civil Procedure provide for liberal discovery. See Fed. R. Civ. P. 26(b)(1); Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978); Hickman v. Taylor, 329 U. S. 495, 501 (1947). "Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . [and] reasonably calculated to lead to the discovery of

admissible evidence." Fed. R. Civ. P. 26(b)(1). Limited only by the broad scope of Rule 26(b), a party has the right to request any information within the "possession, custody, or control" of the party being served. Fed. R. Civ. P. 34(a).

### 1. **Document Request No. 10 and Interrogatory No. 12**

Document Request No. 10 seeks "[a]ny and all contracts, retainers or evidence of renumeration with or to Dr. Dowdle." Interrogatory No.12 asks Defendants to:

> [r]elate all contractual dealings or other relationships that have existed or come to pass between any of the Defendants and Dr. Dowdle, stating specifically how many times Defendants have hired Dr. Dowdle to provide IME services, to testify, or to provide any other services, and identifying all compensation that Dr. Dowdle receives.

Plaintiff argues that this information is relevant to the issue of bias or motive on the part of Dr. Dowdle.

Defendants have provided information related to the number of cases in which they hired Dr. Dowdle. At the motion hearing, Defendants promised to produce information relating to Dr. Dowdle's contracts and compensation. As far as the Court can tell, once Defendants provide the promised information, they have fully responded to these discovery requests. Therefore, these parts of Plaintiff's motion are denied as moot.

2. **Document Request No. 12**

Plaintiff seeks "[a]ny and all correspondence with Dr. Dowdle concerning any other insured of National life Insurance Company or UnumProvident." Included in this request is a request for the reports Dr. Dowdle generated in other cases. Plaintiff argues that this information is relevant to the issue of Dr. Dowdle's bias or motive. Moreover, Plaintiff argues that this information will indicate how Dr. Dowdle defines the term "disabled." Plaintiff avers that Dr. Dowdle is using the word "disabled" to mean "paralyzed." This definition, argues Plaintiff, is at odds with Minnesota law.

Defendants originally proffered boilerplate objections based on inability to lead to the discovery of admissible evidence, overbreadth, burdensomeness, and harassment. In their opposition papers, Defendants characterize Plaintiff's request as "overkill discovery" regarding Dr. Dowdle's alleged bias. (Def. Mem. Opp. Mot. Compel at 4.) Defendants argue that Plaintiff can offer proof of bias by less invasive means.

The Court finds that this request is reasonably calculated to lead to the discovery of admissible evidence. Specifically, this information is relevant to Plaintiff's contention that Dr. Dowdle misuses the word "disability." Since Defendants have admitted that Dr. Dowdle only worked on three other cases for them, the Court finds Defendants' burdensomeness and overbreadth arguments without merit. Therefore, this information is discoverable.

However, all the names and identifying information regarding Defendants' other insureds may be redacted to protect the privacy of the other insureds. Accordingly, this part of Plaintiff's motion is granted.

### 3. **Document Requests Number 29 & 31 and Interrogatory Nos. 16 & 18**

Document Request No. 29 seeks "[a]ll documents that evidence, support, tend to prove or relate to any compensation or payments received by Dr. Taylor from any or all of the Defendants, including any income received." Doc. Request No. 31 seeks the same information relative to clinical consultants. Interrogatory No. 16 asks Defendants to "[s]tate exactly Dr. Taylor's compensation agreement with any or all of the Defendants." Interrogatory No. 18 seeks the same information relative to clinical consultants.

Plaintiff argues that this information is relevant to demonstrate bias on the part of Dr. Taylor and the clinical consultants. Plaintiff states that in denying him benefits, Defendants relied on Dr. Taylor's chart review and the conclusions of unidentified clinicians. Defendants do not rebut this assertion. Defendants originally objected to these requests with boiler plate objections based on vagueness, overbreadth, ambiguity, irrelevancy, and inability to lead to the discovery of admissible evidence. Defendants also responded that providing this information may violate certain disclosure prohibitions under

Massachusetts law. Defendants offer no support for their boiler plate objections.

The Court finds this information relevant. Defendants do not argue that Dr. Taylor's chart review and the clinicians' opinions did not form part of the basis for terminating Plaintiff's benefits. The information is therefore, very relevant to the issues of this case. This is true even when employing Defendants' narrow theory of the case: "[t]he issue in this matter is whether Plaintiff is disabled within the meaning of the insurance policies issued to him by Defendants." (Def. Opp. Mot. Compel at 5.) The Court also finds that since Plaintiff has agreed to sign a protective order, Dr. Taylor's and the clinicians' private information will not be used for inappropriate purposes. Accordingly, these parts of Plaintiff's motion are granted.

**4. <u>Document Request No. 32</u>**

Plaintiff seeks information related to the legal and practical relationships between Defendants. Although Defendants originally objected to this request, they have promised to provide the requested information, subject to a protective order. Plaintiff requests an order requiring Defendants to produce the information within ten days.

As stated above, Plaintiff has agreed to sign a protective order. Neither party has indicated a reason why a signed protective order has not been filed in this case. However, it is obvious to the Court that important

discovery is being delayed due to the lack of such an order. Accordingly, the Parties are ordered to draft and complete their Protective Order within thirty days of this Order. Moreover, Defendants are ordered to comply with this discovery request within thirty days of this Order. Thus, this part of Plaintiff's motion is granted as to production within thirty days and denied as to production within ten days.

**5. Document Request Nos. 33 & 37**

Plaintiff seeks information related to Defendants' claims-handling procedures. In response to Request No. 33, Defendants have offered to produce their claims manual subject to a protective order. At the motion hearing, Plaintiff did not take issue with the substance of this promise, but requested that the Court order Defendants to produce the promised information. Plaintiff also requested that the Court order Defendants to produce promised information responsive to Request No. 37. The Court cannot find a promise specifically related to Request No. 37. However, based on Plaintiff's Counsel's representations at the motion hearing, the Court assumes that the claims manual is also part of a promised response to Request No. 37.

The Court has already ordered the Parties to enter into a protective order. See Part II.B.4., supra. Since the lack of a protective order was the only impediment to Defendants' production, this part of Plaintiff's motion is granted.

### 6. **Document Request No. 36**

Plaintiff seeks:

> [a]ll documents that evidence, support, tend to disprove, or relate to any changes that have been made to the interpretations of any terms in the insurance contracts issued by National Life of Vermont and/or National Life Insurance Company from January 1989 to the present, and all documents that reflect who proposed and effectuated the changes, how their interpretations were proposed and effectuated, an why those terms were interpreted in a new and different manner.

Plaintiff argues that this information is relevant as parole evidence to help define ambiguous contract terms. Plaintiff also asserts that this information is relevant to its good faith and interference with contract claims insofar as Defendants UnumProvident or Provident changed their interpretation of policy terms in order to reduce claims-made payments on policies originally issued by Defendant National Life, the party with whom Plaintiff contracted, when Defendants UnumProvident and Provident purchased National Life.

Defendants respond that the request is overly broad and not reasonably calculated to lead to the discovery of admissible evidence. Defendants argue that the contract terms are not ambiguous, and therefore, the information is not relevant. The Court disagrees.

As stated above, Plaintiff asserts that Defendants may be using an improper definition of "disabled." Furthermore, the Court finds discovery related to possibly different contract interpretations between National and its

subsequent buyers relevant to the issues in this case. Plaintiff was under the impression that he was "disabled" within the meaning of his policy. The fact that Defendants paid him benefits for a year bolsters this belief. Plaintiff is entitle to know why, beyond the results of a medical exam which Plaintiff disputes, Defendants do not consider him disabled.

Notwithstanding the above, the Court finds that discovery related to the years 1989 to the present is overly broad. Therefore, Defendants must produce this information only as it relates to the time that National Life was purchased by UnumProvident/Provident forward. Plaintiff's primary reason for this request is to discover whether or why UnumProvident or Provident changed their interpretation of Plaintiff's original policy terms. Thus, it is reasonable to limit discovery to a time beginning with those companies' involvement with the disputed contract.

Moreover, the Court finds that information from the policy-setting arms of Defendants' companies is what is relevant. Defendants need not seek out every claim decision which contained these terms in order to find a rogue agent or claims decision. It is the companies' interpretations which are relevant, and the companies' documents, policy statements, claims-handling instructions, memos etc. that must be produced. Accordingly, this part of Plaintiff's motion is granted in part and denied in part.

At this juncture, the Court notes that Plaintiff often bases its arguments on claims for intentional interference with contract. There is no such claim in this case. However, at the motion hearing, Plaintiff often tied his interference with contract case and bad faith breach of contract arguments together. The Court assumes that Plaintiff's arguments are based on its bad faith claim and addresses Plaintiff's arguments accordingly.

**7. <u>Document Request Nos. 34, 35, 38, & 39</u>**

Plaintiff seeks information relating to Defendants' alleged increase in claims denials over the relevant time period, relating to Defendants' three hundred percent increase in claims denials since July 2001, and relating to the economic advantage Defendants gain as a result of denying claims. Plaintiff argues that this information is relevant to his claim that Defendants UnumProvident and Provident interfered with his contract with Defendant National Life and to his bad faith breach of contract claim. Plaintiff quotes Defendants' Annual Report which touts huge cost savings. Moreover, Plaintiff's Counsel avers that he proved in a prior case that once Defendant Provident bought the insurance company involved in that case, the company changed its approach to compensating claimants for soft tissue injuries. Plaintiff also argues that many of the disputed requests can be answered with "numbers," without the need for actual claims file information, rendering Defendants' privacy objections moot.

Defendants respond that information related to the handling of other claims and to claims-handling, in general, is not discoverable insofar as this information does not address the "ultimate reason for denial of Plaintiff's claim." (Def. Mem. Opp. Pl. Mot. Compel at 7.) Moreover, Defendants argue that since every claim is paid or denied based on the individual facts of the case, information relating to their handling of other claims is irrelevant. Defendants also assert that disclosure of personal information would violate other claimants' privacy.

**a. <u>Document Request Nos. 34 & 35</u>**

Plaintiff seeks "[a]ll documents that evidence, support, tend to disprove, or relate to whether the denials of claims made by National Life of Vermont insureds have increased over any and all relevant periods of time from January 1989 to the present and those relating to the reasons therefor." Plaintiff also seeks the same information as it relates to the time period following "Unum's purchase of Provident" and "the reasons why denials have increased."

The Court finds that these requests seek information relevant to Plaintiff's claim that Defendants are systematically denying more and more claims which would have been honored by National Life. The Court further finds that this is one of the requests which can be responded to with

"numbers" only, and that no personal claimant information need be disseminated.

Notwithstanding the above, the Court finds the request a bit overbroad. The real issue in Plaintiff's claims is the difference between the number of insurance claims denied by National Life as an independent company and the number of claims denied by National Life in its subsequent incarnation as a part of UnumProvident/Provident. Therefore, Defendants need only provide the number of denied National Life Insurance claims for the year 1989, and the years since National Life was purchased by UnumProvident/Provident. Those figures should provide Plaintiff an adequate basis for comparison.

**b. Document Request No. 38**

Plaintiff seeks information related to the "economic advantages that UnumProvident obtains by reducing the benefits paid out by National Life and/or by increasing the profitability of National Life's disability insurance portfolio."

The Court finds this request to be irrelevant and, arguably, harassing. The economic benefits of not having to pay out claims are obvious. Moreover, insofar as this request is designed to obtain information related to the relationship between Defendants, it is duplicative of Request Nos. 32, 35, and possibly 36. Therefore, this part of Plaintiff's motion is denied.

c. **Document Request No. 39**

Plaintiff seeks "[a]ll documents that evidence, support, tend to disprove, or relate to the approximately 300% increase in claims or claim denials by Defendants since July 2001 and those documents reflecting the reasons therefor."

The Court finds this request vague and overbroad. Even when reading this request in light of our generous discovery rules, the Court finds it possible to interpret this request in a number of different ways. The Court is unsure if Plaintiff is seeking information related to denied claims, Defendants' company policies regarding denying claims, Defendants' "raw numbers" which would demonstrate an increase in denied claims, or other information.

The Court is wary of creating a situation in which Defendants must defend every claim denial from the past ten months. This kind of discovery would significantly prolong this case. Moreover, the Court finds that Defendants' answers to other document requests will likely yield information responsive to this request. Therefore, this part of Plaintiff's motion is denied.

Based upon all the files, records, and proceedings herein, **IT IS HEREBY ORDERED**:

(1) Plaintiffs' Motion to Compel Defendants to Produce Documents and Further Responses to Interrogatories (Doc. No. 27) is **GRANTED IN PART**, **DENIED IN PART**, and **DENIED AS MOOT IN PART**, as set forth fully in the body of this Order;

(2) Plaintiffs' Motion to Amend Complaint (Doc. No. 30) is **GRANTED IN PART** and **DENIED IN PART** as set forth fully in the body of this Order;

(3) Parties must file a signed Protective Order with the Court by July 1, 2002; and

(4) Defendants must comply with this Order and respond to any outstanding discovery requests by July 1, 2002.

Dated: May 29, 2002

JONATHAN LEBEDOFF
Chief United States Magistrate Judge

## *Featured Speakers Include:*

District of Minnesota

Judge David S. Doty

Judge Donovan W. Frank

Judge Paul A. Magnuson

Judge Ann D. Montgomery

Judge John R. Tunheim

Chief Magistrate Judge Jonathan Lebedoff

Magistrate Judge Arthur J. Boylan

United States Bankruptcy Court
District of Minnesota

Judge Robert J. Kressel

**Application Pending for 7.5 CLE Credits including 2 Ethics and 1 Bias Credit**

The Minnesota Chapter of the Federal Bar Association
c/o Kelly & Berens, P.A.
80 S. 8th Street, Suite 3720
Minneapolis, MN 55402

NON-PROFIT
ORGANIZATION
U.S. POSTAGE
PAID
Minneapolis, MN
Permit No. 2657

MINNESOTA CHAPTER OF THE FEDERAL BAR ASSOCIATION

In connection with
The Federal Judiciary

# *28th Annual Federal Court Practice Seminar*

June 19, 2002
8:00 am—5:15 pm

Minneapolis Convention Center
1301 Second Avenue South
Room 208
Minneapolis, MN 55402
(612) 335-6000

## Morning Session:

| | |
|---|---|
| 7:30-8:00 | **Registration** |
| 8:00-8:15 | **Opening Remarks and Welcome,** ***Judge Ann D. Montgomery*** |
| 8:15-9:00 | **Securities Law Issues in the Wake of Enron,** ***Timothy J. Warren (SEC Midwest Regional Office), Professor Niels Schaumann (William Mitchell College of Law), Karl L. Cambronne (Chestnut & Cambronne)*** |
| 9:00-9:45 | **Current Issues in Employment Law,** ***Judge Paul A. Magnuson, Linda L. Holstein (Parsinen Kaplan Rosberg & Gottlieb PA), John R. McDonald (Meagher & Geer, PLLP), Daniel Oberdorfer (Leonard, Street and Deinard)*** |
| 9:45-10:00 | **Morning Break** |
| 10:00-10:45 | **Current Initiatives in the U.S. Attorneys' Office,** ***Tom Heffelfinger (U.S. Attorneys Office)*** |
| 10:45-11:45 | **Discovery Disputes: Professionalism in the Practice of Law?,** ***Judge David S. Doty, Chief Magistrate Judge Jonathan Lebedoff, Magistrate Judge Arthur J. Boylan,*** |
| 11:45-12:45 | **Lunch (Room 211)** |

11:45-12:45 Lunch (Room 211)

## Afternoon Session:

| | |
|---|---|
| 12:45-1:30 | **The Clerk's Office Can Be Your New Best Friend,** ***Celeste Shahidi, Lou Jean Gleason, Mary Lenner, Gertie Simon, Andy Seldon*** |
| 1:30-2:15 | **How to Effectively Teach and Persuade in Patent or Intellectual Property Cases: Why, When and How,** ***Judge Donovan W. Frank, Becky R. Thorson (Robins, Kaplan, Miller & Ciresi), Stephen J. Davidson (Leonard, Street and Deinard)*** |
| 2:15-3:15 | **Issues in the Wake of 9/11: Racial Profiling --** ***Daniel M. Scott (U.S. Federal Public Defenders' Office);*** **Response by the Department of Justice --** ***Tony Brown (U.S. Attorneys Office)*** |
| 3:15:3:30 | **Afternoon Break** |
| 3:30-4:15 | **Update on Technology Tools for Litigating in Federal Court,** ***Judge John R. Tunheim, Judge Robert J. Kressel, Eric J. Magnuson (Rider, Bennett, Egan & Arundel)*** |
| 4:15-5:15 | **Ethics in "Real Life" Practice Situations,** ***Martin A. Cole (Lawyers Professional Responsibility Office)*** |

## *Seminar Registration*

☐ Member $195.00

☐ Non-Member $225.00

Name ____________________

Firm/Employer ____________________

Address ____________________

____________________

Phone ____________________

E-Mail ____________________

**Complete registration form and send with check payable to:**

**Minnesota Chapter, FBA**
**c/o Nancy Gustafson**
**Kelly & Berens, P.A.**
**Suite 3720 IDS Center**
**80 South Eighth Street**
**Minneapolis, Minnesota 55402**

**Not a Member? Join the FBA**

*To apply on-line or to download application form go to http://www.fedbar.org and click on "Join the FBA."*

Questions call: Barbara P. Berens, Vice President, Planning, Minnesota Chapter FBA
(612)-349-6171

**Annual Seminar Planning Committee:**

Kristine M. Boylan, Meagher & Geer, P.L.L.P.

Catherine A. McEnroe, Leonard, Street and Deinard

Celeste M. Shahidi, U.S. Courthouse Minneapolis Building

Susan Nolting, U.S. Department of Justice

Maureen Watz Gornik, Warren E. Burger Federal Building