**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

**JAMES P. SEIM, Dr., D.C.,**

Plaintiff,

v.

**NATIONAL LIFE OF VERMONT, NATIONAL LIFE INSURANCE COMPANY, a Vermont Corporation, and UNUMPROVIDENT CORP., a Maine Corporation,**

Defendants.

---

Civil No. 01-2434 (PAM/RLE)

**O R D E R**

APPEARANCES

Jeffery M. Thompson, Esq. for Plaintiff.

Terence J. Wagener, Esq. for Defendants.

---

JONATHAN LEBEDOFF, Chief United States Magistrate Judge

The above-entitled matter came on for hearing before the undersigned Chief Magistrate Judge of District Court on July 9, 2002 on Defendants' Motion to Compel Discovery and to Compel Plaintiff to Appear at an Independent Medical Examination (Doc. No. 48). The case has been referred to the undersigned for resolution of pretrial matters pursuant to 28 U.S.C. § 636 and D. Minn. LR 72.1.

FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

## I. INTRODUCTION

This case arises out of an insurance coverage dispute. Plaintiff is a chiropractor. In 1989, Plaintiff bought "own occupation" disability insurance from Defendant National Life of Vermont. Plaintiff timely paid his premiums and the policies were in effect during all times relevant to the instant litigation. In April 2000, Plaintiff was in an automobile accident in which he injured his neck, spine, and upper extremities. Plaintiff contends that as a result of this accident he is permanently disabled within the meaning of his insurance policies. Specifically, Plaintiff avers that he is unable to perform chiropractic work without risking further injury and suffering pain.

In July 2000, Plaintiff began collecting disability benefits from Defendants. In June 2001, Plaintiff underwent an independent medical exam at Defendants' request. The independent medical examiner, Dr. Dowdle, concluded that Plaintiff was not disabled under the policies. Defendants then ceased paying Plaintiff's disability benefits. Defendants are currently paying Plaintiff's disability benefits under a preliminary injunction ordered by the Honorable Paul A. Magnuson. Plaintiff contends that Defendants breached the insurance contracts by refusing to pay disability benefits.

## II. DISCUSSION

In the instant motion, Defendants seek an order compelling discovery and compelling Plaintiff to appear at a second independent medical examination.

### A. Defendants' Motion to Compel Discovery

The Federal Rules of Civil Procedure provide for liberal discovery. See Fed. R. Civ. P. 26(b)(1); Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978); Hickman v. Taylor, 329 U. S. 495, 501 (1947). "Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . [and] reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Limited only by the broad scope of Rule 26(b), a party has the right to request any information within the "possession, custody, or control" of the party being served. Fed. R. Civ. P. 34(a).

In the instant motion, Defendants seek discovery on seven disputed interrogatories and document requests. The Parties have addressed these disputed requests in three broad categories. The Court will address the requests using the same categories.

#### 1. Information Related to Patient Treatments

Defendants seek information related to Plaintiff's work as a chiropractor. Included are requests for documents related to the duties and

tasks Plaintiff performed in his work, including patient treatment charts. Defendants argue that this information is relevant because it will provide a comparison between how many treatments Plaintiff performed before his accident and how many treatments Plaintiff now performs. Plaintiff agreed to produce nonprivileged responsive documents containing information for the time period beginning one year prior to his alleged onset of disability. Defendants request this information for the time period beginning two to four years prior to Plaintiff's alleged onset of disability. The production of patient charts and the time period to be covered by any disclosures remain at issue.

Plaintiff argues that Minnesota's doctor-patient privilege statute prohibits the dissemination of any patient information without written permission from the patient. Moreover, Plaintiff asserts that if the Court finds that he must produce patient information, the information should be limited in time. Defendants respond that they are not seeking information which would violate the doctor-patient privilege. Rather, Defendants seek only information related to the types of chiropractic treatments and other procedures performed by Plaintiff. Defendants do not seek any patient identifying information.

Minnesota law forbids chiropractors from testifying in court regarding "any information or any opinion based thereon which the [chiropractor] acquired in attending the patient in a professional capacity, and which was necessary to enable the [chiropractor] to act in that capacity."

Minn. Stat. §595.02(d). Minnesota law also forbids the dissemination of a patient's health records without a signed release. See Minn. Stat. § 144.335(a). Plaintiff argues that these statutes prohibit him from releasing even redacted medical records. Although there is no Minnesota or Eight Circuit case law on point, Plaintiff contends that the spirit of Minnesota's privilege will be violated if he must disclose redacted patient charts. The Court disagrees.

In State v. Staat, 192 N.W.2d 192 (Minn. 1971), a case cited by Plaintiff, the Minnesota Supreme Court articulated the theory underlying the doctor-patient privilege. The Staat court stated that the privilege exists to encourage patients to freely disclose symptoms to their doctors without the fear of "unwarranted, embarrassing, and detrimental disclosure in court." Id. at 195 (citations omitted). The Court finds that requiring disclosure of redacted medical records in this case does not implicate the kind of policy considerations contemplated by the doctor-patient privilege.

The Minnesota cases cited by Plaintiff all involved the dissemination of individual medical records. That is not the case here. Defendants do not seek any specific records. Rather, Defendants merely seek information related to Plaintiff's "occupational duties." The Court fails to see how disclosing the number or type of treatments a chiropractor provides in any given year will have a chilling effect on the communications between chiropractors and their patients.

The Court finds that redacting all identifying information will provide Defendants with the very relevant information they desire, while protecting the identity of the patients whose information is contained in the charts. Moreover, the Parties have entered into a protective order in this case. (Doc. No. 42.) This order will further protect the information produced in response to this request.

The Court also disagrees with Plaintiff that the treatment notes contained in the charts must be redacted in order to uphold the doctor-patient privilege. After reviewing the sample patient chart provided by Plaintiff, the Court concludes that the "Daily Progress Notes" and check-off columns contained in the chart do not contain information which implicates patients' privacy rights. Plaintiff's Counsel argues that this information must be redacted because it is "virtually entirely medical treatment information." (Thompson Aff. ¶7.) Plaintiff misconstrues Defendants' request. The treatment information is precisely what Defendants are entitled to. Defendants are entitled to know how many times Plaintiff performed certain treatments, treatments Plaintiff now claims he cannot perform because of his injuries.

Furthermore, the Court does not find that redacting the identifying information from the treatment charts will be an undue burden. It appears that all the identifying information is located at the top of the chart. It should be an easy task to mask off that part of the charts when photocopying them.

Any references included in the "Daily Progress Notes" section of the chart reviewed by the Court merely identify the patient as "the patient" or "her." The chart reviewed by the Court contained notes written by at least three different people. The Court, therefore, assumes that it is the clinic's practice to write "Daily Progress Notes" in a format which does not contain identifying information such as names. Accordingly, Plaintiff must provide redacted copies of his patient charts to Defendants.

Notwithstanding the above, the Court agrees with Plaintiff that it is an undue burden to require production of charts dating back to1996. Plaintiff has stated under oath that he has over 800 patient charts which encompass this time period. (Seim Aff. ¶2.) The Court finds that sixteen months of charts should providc Dcfendants with an adequate basis for comparison. Moreover, although no identifying information appeared in the "Daily Treatment Notes" of the chart the Court reviewed, limiting the production will allow Plaintiff to more easily redact any identifying information that may appear in the "Daily Treatment Notes" section of other charts. Therefore, this part of Defendants' motion is granted with respect to redacted patient charts dating from January 1999 to April 2000, and denied with respect to patient charts dating back to 1996.

**2. Information Related to Plaintiff's Travel and Expenses**

Defendants seek information related to any vacations or trips Plaintiff has taken since his alleged onset of disability, including any travel outside of Ramsey and Hennepin Counties. Defendants also seek credit card receipts and statements from May 2000 to the present. Defendants argue that the requested information "may disclose that Plaintiff is engaged in physical conduct which exceeds the restrictions and limitations placed upon him by his treating physician." (Pl. Mem. Supp. Mot. Compel at 4-5.)

The Court disagrees. Plaintiff has never represented that he is totally paralyzed or unable to travel. Plaintiff's claims arise solely out of his expressed inability to work in his chosen profession. Defendants' requests have no relation to those claims and the Court finds them overbroad, irrelevant, and needlessly intrusive. The requests amount to the proverbial fishing expedition. Accordingly, this part of Defendants' motion is denied.

**3. Documents Related to Chiropractic Clinic Income and Expenses**

Defendants seek "[a]ll documents evidencing income and expenses at your chiropractic clinic from four (4) years prior to the start of your alleged disability to present." Defendants argue that they need this information to calculate the amount of residual disability benefits to which Plaintiff may be entitled under his policies. Defendants' motion papers also argue that since Plaintiff is seeking overhead expense benefits from August 2001 through the

date those benefits are exhausted, evidence of prior overhead expenses are relevant to demonstrate the reasonableness of any claimed expenses.

Plaintiff responds that he has already provided Defendants with tax returns for the past five years and that these returns provide sufficient documentation of his income. Moreover, Plaintiff asserts that he has provided clinic expense information for the time period beginning in January 1999. Plaintiff avers that he has produced all clinic expense information that is accessible to him. (Seim Aff. ¶6.) In addition, Plaintiff states that his claim for business overhead expenses does not justify production of expense records because those benefits have already been exhausted and are no longer at issue.

Defendants do not rebut the argument that overhead expense benefits are exhausted and no longer at issue. At the motion hearing, Defendants only argued the need to calculate partial disability benefits. Therefore, the Court assumes the argument related to overhead expense benefits is moot and will only address the issue of clinic expenses as they relate to calculating partial disability benefits.

The Court finds that Plaintiff has sufficiently responded to this request. At the motion hearing, Defendants' Counsel stated that Defendants need to know Plaintiff's "income" for the past five years. Two of the policies at issue in this case calculate "Earnings per Month" as "all wages, fees and other pay earned by the Insured in a month for work done by the Insured . . . less

usual and customary income taxes." (Def. Mem. Supp. Mot. Compel at 5). One of the policies at issue calculates "Residual Disability Benefits" by using "loss of net income" and "prior net income." (Id. at 8.) All this information can be found in Plaintiff's tax returns. It is Plaintiff, not Plaintiff's clinic, who is seeking benefits. Therefore, it is Plaintiff's personal income which is relevant.

Moreover, Defendants proffer no evidence to rebut Plaintiff's claim that he does not have clinic expense information pre-dating 1999. In the absence of such evidence, the Court must accept Plaintiff's representation that he is complying with his discovery obligations. See Onwuka v. Fed. Express Corp., 178 F.R.D. 508, 514 n.2 (D. Minn. 1997) (citations omitted); Marvin Lumber v. PPG Indus., Inc., 168 F.R.D. 641, 643 n.1 (D. Minn. 1996). Thus, this part of Defendants' motion is denied.

## B. Defendants' Motion to Compel Plaintiff to Appear at an Independent Medical Examination

On June 1, 2001 Defendants' orthopedist, Dr. Dowdle, conducted an independent medical examination ("IME") of Plaintiff. Defendants now seek an order compelling Plaintiff to appear at a second IME to be conducted by a different orthopedist. Defendants argue that they are entitled to conduct the second IME for two reasons: (1) Federal Rule of Civil Procedure 35 does not limit the number of medical examinations to which a party may be subjected, and (2) Defendants are allowed to conduct another examination under the policies at issue in this case.

**1. Whether Defendants May Conduct the Examination Under Federal Rule of Civil Procedure 35**

Federal Rule of Civil Procedure 35 states:

> When the mental or physical condition . . . of a party . . . is in controversy, the court in which the action is pending may order the party to submit to a physical or mental examination by a suitably licensed or certified examiner. . . . The order may be made only on a motion for good cause shown.

Fed. R. Civ. P. 35(a).

First, in this case there is no doubt that Plaintiff placed his physical condition in controversy by suing for disability benefits under the policies he purchased from Defendants. Second, there is no argument that the physician selected to conduct the examination is not suitably licensed. The point of controversy, therefore, remains whether good cause exists to order the IME.

The good cause requirement cannot be met by "mere relevance to the case." Schlagenhauf v. Holder, 379 U.S. 104,118 (1964). The decision whether to order an IME is committed to the discretion of the court. See id. at 118-19. The court may order a subsequent IME if it deems a second examination necessary. See Peters v. Nelson, 153 F.R.D. 635, 637 38 (N.D. Iowa 1994) (citations omitted). However, courts should require a stronger showing of necessity when considering a second IME. See Vopelak v. Williams, 42 F.R.D. 387, 389 (N.D. Ohio 1967). When considering whether to allow a subsequent IME, the courts should limit the number of examinations to the

"minimum necessary considering the party's right to privacy and the need for the court to have accurate information." Peters, 153 F.R.D. at 638 (citations omitted). To this end, subsequent IMEs should not be "needlessly duplicative, cumulative, or invasive." Id.

Courts have found that good cause exists for subsequent IMEs in a number of circumstances. Subsequent IMEs are allowed when there are representations of a change in a party's medical condition. See Pettyjohn v. Goodyear Tire & Rubber Co., Civ. A. No. 91-2681, 1992 WL 176494, at *2 (E.D. Pa. July 16, 1992) (denying request for a second IME when there was no showing of changed condition); Lewis v. Neighbors Const. Co., 49 F.R.D. 308, 309 (W.D. Mo. 1969) (allowing second IME when first IME was more than two years old and plaintiff's physical condition may have changed); Vopelak, 42 F.R.D. at 389 (allowing second IME when there were representations of changes in plaintiff's physical condition). Subsequent IMEs are also allowed when there is a need for examinations by different specialists. See Stewart v. Burlington Northern R.R.,162 F.R.D. 349, 351 (D. Minn. 1995) (denying request for second IME by specialist in the same field); Peters, 153 F.R.D. at 639; Marshall v. Peters, 31 F.R.D. 238, 239 (S.D. Ohio 1962). Likewise, subsequent IMEs are allowed when the first IME is inadequate or incomplete. Mayer v. Illinois N. Ry., 324 F.2d 154, 156 (7th Cir. 1963).

None of these situations exists in the instant case. Defendants do not proffer evidence that Plaintiff's physical condition has changed or that Plaintiff will be examined by a specialist in a different field. Rather, Defendants argue that good cause exists to order a second IME because their first examination is a year old, and because they will be prejudiced if they are not allowed to supplement their medical evidence as Plaintiff supplements his evidence.

The Court finds these arguments unavailing. The case at the bar is very similar to Stewart v. Burlington Northern R.R., 162 F.R.D. 349 (D. Minn. 1995). In Stewart, the plaintiff was allegedly injured while working for the defendant. On November 14, 1994 the plaintiff submitted to an IME conducted by the defendant's orthopedist in accordance with the terms of a Wage Continuation Agreement. On December 2 1994, the plaintiff filed suit against his employer to recover damages for the injuries suffered at work. Shortly after the lawsuit commenced, defendants scheduled a second orthopedic examination of the plaintiff with another physician. The Stewart court denied the defendant's motion to conduct the second IME. The court reasoned that the defendant's prior opportunity to examine the plaintiff, coupled with the defendant's ability to consult freely with the first orthopedist, undermined the claim that good cause existed to conduct the second IME. See

id. at 351. The court issued its order denying the second IME eight months after the first IME. See id. at 349.

In this case, Defendants examined Plaintiff prior to commencement of the case. The results of that IME are only four months older than the results of the first IME in Stewart. The Court does not find one-year-old examination results to be irrelevant, especially when the results indicate that Plaintiff's condition is chronic and not subject to change. (Thompson Aff. Ex. 1 at 40.) Defendants do not rebut the finding that Plaintiff's condition is chronic and stable. Furthermore, Defendants request an examination by a physician in the same specialty as the physician who conducted the first IME. These facts do not constitute good cause for ordering a second IME. Rather, these facts seem more like doctor "shopping," which is something this Court will not condone. See Peters, 153 F.R.D. at 639.

At the motion hearing, Defendants alluded to a "Magistrate Judge Erickson case" in which Judge Erickson allowed a second IME when the first IME was two years old. The Court has reviewed the case law and believes Defendants are referring to Sauer v. Burlington N. R.R., 169 F.R.D. 120 (D. Minn. 1996). The case at the bar can be distinguished from Sauer. In Sauer, the first IME was two years old at the time Judge Erickson ordered the second IME. See id. at 124. More importantly, the second IME was to be conducted by an orthopedist, while the first IME was conducted by a neurologist. See id.

In the instant case, the first IME is only one year old and the proposed second IME is to be conducted by a second orthopedist. Therefore, given the facts of the instant case, Stewart is more persuasive.

At this point, Defendants have not demonstrated the requisite good cause for allowing a second IME. If circumstances change Defendants may, of course, seek relief from the appropriate court.[1] See Stewart, 162 F.R.D. at 351. However, at this time this part of Defendants' motion must be denied on this basis.

### 2. Whether Defendants May Conduct the Examination Under the Terms of the Policies

Defendants also argue that they are entitled to conduct a second IME of Plaintiff under the terms of the insurance policies at issue in this case. The pertinent policy provisions follow:

> We have the right to examine, at our own expense, the Insured when and as often as we may reasonably require while a claim is still pending or benefits are being paid

(Thompson Aff. Ex. 7, 8.)

> As often as is reasonable, we may require proof of the continuance of disability of the Insured. We also, at our own expense, have the right when and as often as we may reasonably require while a claim is pending or benefits are being paid . . . to examine the Insured.

(Id. Ex. 9.)

---

[1]This case has been transferred to Magistrate Judge Raymond L. Erickson.

> To make a claim under this policy, you [must] undergo a medical examination by a specialist appropriate for the condition or a personal interview as often as we reasonably request while the claim is pending.

(Id. at Ex. 10, 11.)

Plaintiff responds that: (1) his claim is not "pending" within the meaning of the policies; (2) that he is not being paid benefits under the policies, but rather is being paid under a court ordered injunction; and (3) that Defendants' request is not reasonable.

The Court agrees with Plaintiff that his claim is not currently "pending" with Defendants. Defendants have reviewed and denied Plaintiff's claims. (Thompson Aff. Ex. 3 at 6 (letter from Defendants stating that Defendants have "completed a full and fair appellate review" of Plaintiff's claim)). The Court also finds that Plaintiff is not "making a claim" under the policy. Plaintiff already submitted to the medical examination contemplated by the "making a claim" provisions when he was examined by Dr. Dowdle in June 2001. Thus, the only issue is whether Plaintiff is currently receiving benefits under the policy such that he may be subjected to reasonable examinations.[2]

The Court finds that Plaintiff is not receiving such benefits. The policy provisions which allow for reasonable examinations are located in the

---

[2]At this juncture, the Court finds that the examinations contemplated by the policies are physical examinations, not "examinations under oath" as suggested by Plaintiff.

"Claims" and "How to File A Claim" sections of the policies. (Id. Ex. 7-11.) The provisions are clearly targeted at assessing a claimant's entitlement to benefits. In fact, one of the provisions states that the very purpose of the examinations is to determine "proof of the continuance of disability of the Insured." (Id. Ex. 9.) Defendants are not paying Plaintiff benefits under the policy. Indeed, Defendants refused to do so, and are only now paying Plaintiff under a court order. (Doc. No. 12, 23.) The court order will be in place until this matter is adjudicated or the order is dissolved.

The order contains no provision allowing Defendants to cease making monthly payments should they discover that Plaintiff is no longer disabled. Therefore, Defendants need not determine whether Plaintiff's disability continues. Moreover, Defendants have repeatedly stated their belief that Plaintiff is not disabled. Defendants cannot logically argue that they require evidence of the continuance of a disability which they deny exists in the first place. Therefore, the Court finds that Defendants' desire to examine Plaintiff is not reasonable. Defendants' motion is denied on this basis also.

Based upon all the files, records, and proceedings herein, **IT IS HEREBY ORDERED**:

(1) Defendants' Motion to Compel Discovery and to Compel Plaintiff's Appearance at an Independent Medical Examination (Doc. No. 48) is

**GRANTED IN PART** and **DENIED IN PART** as set forth fully in the body of this Order; and

(2) Plaintiff must comply with this Order and respond to any outstanding discovery requests by August 12, 2002.

Dated: July 11, 2002

JONATHAN LEBEDOFF
Chief United States Magistrate Judge